```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - -x

In re:                           :

KEVEN A. MCKENNA, P.C.           :    BK No. 10-10256
         Debtor                       Chapter 11
- - - - - - - - - - - - - - - - -x

In re:                           :

KEVEN A. MCKENNA                 :    BK No. 10-10274
         Debtor                       Chapter 7
- - - - - - - - - - - - - - - - -x

KEVEN A. MCKENNA, P.C. and       :
KEVEN A. MCKENNA
         Plaintiffs              :

v.                               :    A.P. No. 10-1069
                                        Consolidated
SUMNER D. STONE                  :
         Defendant
- - - - - - - - - - - - - - - - -x
```

### DECISION AND ORDER RE: TRUSTEES' OBJECTIONS TO SUMNER STONE'S CLAIMS

APPEARANCES:

    Thomas P. Quinn, Esq.
    Stefanie D. Howell, Esq.
    Attorneys for Trustees/Plaintiffs
    McLAUGHLIN & QUINN, LLC
    148 West River Street, Suite 1E
    Providence, Rhode Island 02904

    Sumner D. Stone, *pro se*
    1045 South Road
    East Greenwich, Rhode Island 02878

**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

BK Nos. 10-10256; 10-10274; A.P. No. 10-1069

Heard on the Trustees'/Plaintiffs' Complaints objecting to the validity and amount(s) of multiple proofs of claim ("POC") filed by Defendant, Sumner D. Stone, in both the corporate ("P.C.") and the individual Keven A. McKenna ("McKenna") cases.

## **BACKGROUND AND TRAVEL**

The P.C. case was filed under Chapter 11 on January 25, 2010, and McKenna's individual Chapter 11 case was filed on January 26, 2010.  Thereafter, the estates proceeded separately as debtor-in-possession cases, and during that phase, both Debtors filed adversary proceedings[1] challenging the validity of claims filed by alleged creditor, Sumner Stone.  On November 24, 2010, Thomas Quinn, Esq., was appointed Chapter 11 Trustee in the P.C. case.[2] On May 4, 2011, the United States Trustee's (the "UST") Motion to Convert the individual case to Chapter 7 was granted, for cause, on the ground that McKenna failed to meet the requirements of 11 U.S.C. §§ 1121(e) and 1129(e), i.e., filing a confirmable reorganization plan within the applicable time limits.  Thereafter, Lisa A. Geremia, Esq., was appointed Chapter 7 Trustee in  BK 10-

---

[1] Adversary Proceeding No. 10-1069 in the P.C. case, and A.P. No. 10-1072 in the individual case.  On July 22, 2011, the adversary proceedings were consolidated and A.P. No. 10-1069 was designated as the lead case.

[2] The appointment of a Chapter 11 trustee, on a close call, was in-lieu-of granting the UST's alternative request to convert the case to Chapter 7.

1

BK Nos. 10-10256; 10-10274; A.P. No. 10-1069

10274. Both trustees have continued to prosecute their objections to Stone's claims.

## **FACTS**

In late 2008, Stone was hired by McKenna as an "at-will employee" (Admitted Fact #27) to perform paralegal services for P.C., McKenna's law practice. The employment contemplated that Stone's compensation be $20.00 per hour for a maximum of twenty hours per week. When his employment with the McKenna entities ended on March 30, 2009, Stone filed for Workers' Compensation benefits, alleging that "he suffered an injury in the workplace on March 30, 2009 that resulted from an assault by his employer [McKenna or P.C.]." Trustees' Ex. A, ¶9, "Application to Compromise and ... Dismiss Pending Workers' Compensation Court Litigation".[3] The Workers' Compensation Court ("WCC") found that Stone sustained a work related injury resulting in partial incapacity (Admitted Fact #16), that P.C. had no insurance coverage on March 30, 2009, (Admitted Fact #17), and that the Workers' Compensation award of benefits and attorney's fees had not been paid.[4] Trustee's Ex. A, ¶¶11,12. Instead of making arrangements

---

[3] Trustees' exhibits are marked by Capital Letters, and Stone's with Arabic numbers.

[4] The Chapter 11 trustee filed a motion to compromise Stone's Workers' Compensation litigation which was approved on July 8, 2011. In that compromise Stone was awarded $33,173.39 in weekly benefits payable from March 30, 2009 through April 29, 2011,

BK Nos. 10-10256; 10-10274; A.P. No. 10-1069

to pay Stone, McKenna on behalf of P.C. and individually, filed numerous pleadings in the WCC, lawsuits in the state courts, and eventually the bankruptcy cases and adversary proceedings in this Court.

Stone filed claims totaling $677,263 in P.C., and claims of $642,450 in McKenna's individual case.  Many of the claims are identical, e.g., Claim 5-1 in the individual and Claim 6-1 in P.C. (Admitted Fact #12), and Stone concedes that in such instances he does not seek double recovery.  Stone's claims fall into four general categories:  (1) a claim for unpaid wages: (2) claims arising from defamatory statements made or published by McKenna; (3) actions for abuse of process; and, (4) a general claim for damage resulting in loss of equity after the foreclosure of rental property formerly owned by Stone.  Stone failed to present specific evidence or documentation to support any of his claims. (Admitted Fact ##9,11)  Nevertheless, the Court will independently address each category of the remaining Stone claims.

---

medical expenses of $5,881, and settled all future benefit claims for $1.00.  It also awarded Stone's Workers' Compensation attorney fees in the amount of $21,000.  Before the settlement, Stone had filed proofs of claim for such benefits in both bankruptcy cases, but the parties agree that such claims are now moot, and not being litigated in this action. (Admitted Fact #23)

3

BK Nos. 10-10256; 10-10274; A.P. No. 10-1069

**THE WAGE CLAIM**

Section 502 of the Bankruptcy Code provides that a claim "filed under section 501 ... is deemed allowed, unless a party in interest ... objects." Under Fed. R. Bankr. P. 3001(f) Stone's proofs of claim "constitute prima facie evidence of the validity and amount of the claim." Here, the Trustees, who have objected to all of Stone's claims, have the initial burden to rebut the claims' *prima facie* validity. *In re Hemingway Transport, Inc.*, 993 F.2d 915, 925 (1st Cir. 1993). Once evidence is presented to rebut the validity or amount of the claim, the burden of persuasion shifts to Stone to present sufficient evidence to support his claims. *In re Harrison*, 987 F.2d 677 (10th Cir. 1993); *In re Colonial Bakery, Inc.*, 108 B.R. 13 (Bankr. D. R.I. 1989).[5]

Stone testified that under his arrangement with McKenna he is owed \$2,985. Stone's Exhibit 1-1,[6] his summary of hours worked, shows that between November 8, 2008 and March 30, 2009, Stone worked 437.5 hours, which calculates to \$8,750 (437.5 hrs x

---

[5] The Court will use this framework in examining each of Stone's claims and the Trustees' objections.

[6] Doing the best we can with less than ideal documentation, multi-page unnumbered exhibits will be referenced by the exhibit designation, number, or letter, and the page of the document containing the information.

4

BK Nos. 10-10256; 10-10274; A.P. No. 10-1069

$20/hr).[7] Stone insists that he was not paid for his total time and that he is still owed $2,985. Stone's Ex. 4, shows that he received $3,030, drawn on P.C.'s account. However, the Trustees' Ex. D-4 and Ex. D-16/17 show that in 2009 Stone also received payments of $3,720 from Paychex, Inc., P.C.'s payroll service, bringing Stone's total compensation to $6,750.[8] Deducting $6,750 from the total amount Stone claimed he should have been paid, $8,750, the evidence is that Stone has a maximum wage claim for $2,000.

### **DEFAMATION**

Defamation is a state law cause of action, and in Rhode Island the elements of this tort are: (1) a false and defamatory statement concerning a person; (2) unprivileged publication to a third party; (3) fault on the speaker's part that is at least negligent; and (4) damages. *Lyons v. Rhode Island Public Employees Council 94*, 516 A.2d 1339,1342 (R.I. 1986). Hence, the "'basic federal rule' in

---

[7] Although both Stone and McKenna testified to the twenty hour per week limit, their practice seems to have varied at times. For example, for the week ending December 7, 2008, Stone claims he worked, and was paid for, 24.75 hours. Trustees' Ex. D-2 shows a check payable to Stone dated March 13, 2009, drawn on P.C.'s account, signed by McKenna, for $495, with the notation "W/E 12/7/08 24.75" on the memo line. The point here is that their conduct was not always consistent with the testimony about their agreement.

[8] Stone's Ex. 4-2 references a payment from "Paycheck" but does not include any amount.

5

BK Nos. 10-10256; 10-10274; A.P. No. 10-1069

bankruptcy is that state law governs the substance of [such] claims." *Raleigh v. Illinois Dept. Of Revenue*, 530 U.S. 15,20, 120 S.Ct. 1951, 1955 (2000) (quoting *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914 (1979)). Since "the burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to [and, more accurately, bears] the burden of proof that normally comes with it." *Id*. Consequently, under the Supreme Court's ruling in *Raleigh*, Stone has the burden of proof on each element of his claim for defamation, as he would in the state courts.

Stone seeks damages "for allegedly defamatory comments made post-petition on or about October 8, 2010, October 14, 2010 and October 15, 2010." (Admitted Fact #29) Stone apparently relies on an article published in *The Providence Journal*, October 5, 2009, which described a "run-in between McKenna and Stone," that "police charged McKenna with assaulting Stone," notes that the Rhode Island Attorney General dropped those charges because there "was no evidence their altercation resulted in injury," and also chronicles McKenna's railings against the Rhode Island's workers' compensation system. The article quotes McKenna as saying that workers' compensation officials "are aiding and abetting a crook ... I am not paying a crook." Stone's Ex. 20. Stone testified that the "crook" comment was made in October 2010, but does not explain the

6

BK Nos. 10-10256; 10-10274; A.P. No. 10-1069

discrepancy in time between the published date of McKenna's statement, October 5, 2009, and his testimony. Stone also testified that McKenna had expressed criticism of his (Stone's) paralegal skills to other attorneys, precluding him from getting work. But Stone was unable to identify anyone who denied him work based on McKenna's comments, and offered no evidence as to damages resulting from McKenna's disparaging remarks. Stone also contends that McKenna's statements also are *per se* defamatory.

Stone has not even begun to satisfy his burden to support a claim of defamation, *per se*, or otherwise. Rhode Island requires that "the essential elements of a crime must be alleged by a defendant for his statements to be considered defamatory per se." *Marcil v. Kells*, 936 A.2d 308, 214 (R.I. 2007)(simple use of word "extortion" about a person's actions without showing of intent to compel another to act unwillingly is not *per se* defamatory). While the word "crook" certainly gives off a strong negative impression, Stone has not shown what, if any, misconduct McKenna was charging him with when "read in the context of the publication in which" it appeared. *Lyons, supra* at 1343. McKenna's ranting was directed at least as much at the Workers' Compensation system as at Stone, whose allegations of damages have always been vague and speculative, at best. When asked at trial how he quantified the amount he seeks, $50,000 in damages plus a counterclaim for another

7

BK Nos. 10-10256; 10-10274; A.P. No. 10-1069

$75,000, Stone replied that the "public suffering" and "torment" he and his children endured from persons (again unnamed) talking about his travails with McKenna entitled him to damages.  Stone offers no evidence to support his claims for defamation,[9] his testimony regarding when the alleged defamatory statements were made, is at odds with several of the dates included in the Joint Pre-trial Order, and his claim is based solely on his subjective unsupported feelings of injury.  Therefore, Stone's claim for damages based upon defamation is **DISALLOWED**.

## ABUSE OF PROCESS

Stone's claims for damages for abuse of process are, like defamation, based on state law and, again, Stone has the burden of proof as to both the validity and amount of claims filed under this theory.  "In order to prove abuse of process, a plaintiff must demonstrate: (1) that 'the defendant instituted proceedings or process against the plaintiff'" and (2) that "the defendant used these proceedings for an ulterior or wrongful purpose that the proceedings were not designed to accomplish." *Palazzo v. Alves*, 944 A.2d 144, 154 (R.I. 2008)( quoting *Butera v. Boucher*, 798 A.2d 340, 353 (R.I. 2002)).

---

[9] Stone's other exhibits, Ex. ##21, 22, are even less helpful regarding the validity of his claims on this issue, and do not establish a prima facie case for defamation of any sort. *Marcil v. Kells, supra,* at 213 ("Whether a particular communication is defamatory is a question of law for the court to decide.")

8

BK Nos. 10-10256; 10-10274; A.P. No. 10-1069

Stone's testimony on this theory also fails for lack of specificity, harping on the multiplicity of legal proceedings which have consumed he and McKenna since 2008. Basically, he asks the Court to find that such a large number of proceedings, in and of itself, establishes that McKenna had a wrongful purpose, but offers no support for that proposition, other than the level of acrimony that has existed throughout his relationship with McKenna. While McKenna's jousting with the Rhode Island Workers' Compensation system has a clearly Quixotic character, Stone has not shown that those proceedings were instituted for any ulterior motive directed to accomplish a wrongful purpose toward him.[10] Since Stone has failed to establish the validity of, and certainly has not quantified, any claim on this theory, *see Raleigh, supra*, all of his proofs of claim based upon alleged abuse of process are **DISALLOWED**.

### CONSEQUENTIAL DAMAGES

These claims are the most amorphous that Stone has filed. As to the grounds, Stone contends that his loss, through foreclosure, of a rental property in East Providence in May 2010, and an alleged resulting loss of equity in the property of around $100,000, is attributable to McKenna. This claim includes legal fees that were

---

[10] Denying liability for a claim in any court proceeding, as McKenna did, contending that Stone did not suffer a workplace injury, is not abusive *per se*.

9

BK Nos. 10-10256; 10-10274; A.P. No. 10-1069

incurred by the bank when it initiated foreclosure proceedings, but how all that ends up as McKenna's responsibility is not explained.

Stone's testimony on this issue was contradictory and contained no substance or merit that was visible to this Court. For example, Stone testified that his tenants "abandoned" the East Providence property in September 2008, even before he began working for McKenna. Earlier, during cross-examination by the Trustees, Stone conceded that the property had not been rented since late 2007 or early 2008 because of housing code violations, and Trustees' Ex. G confirms that there were numerous code violations.[11] Stone also conceded that the property was encumbered with an *interest only balloon mortgage* which he had attempted, unsuccessfully, to renegotiate in February or March 2010. In addition, Stone was silent as to how he was paying the mortgage on the rental property, or whether payments were from rental income or other sources, before he started working for McKenna. Since Stone's problems with this property pre-date his association with McKenna, there is no rational way to conclude that McKenna was the cause of Stone's East Providence real estate/financial issues, although he stubbornly adheres to that view. He presented no evidence relating to his inability to renegotiate the mortgage,

---

[11] Stone's Ex. 20 also contains notices of these housing code violations.

10

BK Nos. 10-10256; 10-10274; A.P. No. 10-1069

other than to aimlessly blame McKenna, and he insists that the East Providence foreclosure and the beginning of foreclosure proceedings on his home due to lack of income, were caused in turn by McKenna's failure to pay Workers' Compensation benefits after March 30, 2009. Such a connection clearly a leap too far.

As to all of his claims discussed above, Stone alleges many things, blaming all of his misfortune on McKenna, then leaves it in the lap of the Court to sort through the rhetoric, to determine if there is any substance to his accusations. Causation and foreseeability are still probably the first legal terms explained to students during their first days in law school. *Palsgraf v. Long Island Railroad Co.*, 162 N.E. 99 (N.Y. 1928). Mr. Stone has completely bypassed these and all other legal and factual hurdles in his quest for "justice." Based on the foregoing discussion, any claim relating to what Mr. Stone has loosely characterized as "consequential damages" is **DISALLOWED**.[12]

---

[12] Stone also filed claims under Rhode Island's crime victim compensation statute, *R.I. Gen Laws § 9-1-2*, but presented no information of any result or disposition of those claims. Without such evidence, those claims are waived, or, to the extent they may somehow be in the record, Stone has failed to carry his burden of persuasion on any claim brought under that statute.

11

BK Nos. 10-10256; 10-10274; A.P. No. 10-1069

## CONCLUSION

Except for his wage claim, there is no evidence that Stone holds a valid claim against either bankruptcy estate, and his testimony was merely a long *ipse dixit*, proving nothing except how much these men dislike one another.

McKenna's irresistible and signature impulse to issue bombastic statements and pleadings, neither adds to nor takes away anything from the merits of the McKenna/Stone disputes, and they in no way affect our legal analysis or otherwise have any impact on this decision. So, for the reasons expressed above, Stone's claim for unpaid wages is **ALLOWED** in the amount of $2,000, and his other claims are **DISALLOWED**.

Enter.

                                      Arthur N. Votolato
                                      U.S. Bankruptcy Court

Entered on docket: 12/2/11